# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM LANE BARCUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 17-2492-JWL-KGG |
| ) | |
| THE PHOENIX INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM & ORDER ON MOTION TO COMPEL

In the present action, which was removed from the District Court of Miami County, Kansas, Plaintiff seeks the proceeds of uninsured motorist coverage from Defendant insurer. (Doc. 1-1.) Plaintiff also seeks attorney fees pursuant to K.S.A. §40-256.

Now before the Court is Plaintiff's Motion to Compel, which primarily addresses the "discoverability of insurance files and the opinions of the experts the Defendant consulted before its denial." (Doc. 24, at 1.) The discovery requests at issue will be discussed and addressed individually herein. Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

### FACTUAL BACKGROUND

The underlying automobile accident occurred on May 30, 2013.  Plaintiff alleges he suffered a brain injury as a result of the accident and claims damages in excess of $2,000,000.  He recovered the policy limits of $100,000 from the motorist.  Thereafter, Plaintiff submitted a demand letter to Defendant on April 30, 2017.  (Doc. 24-2.)  A subsequent demand letter was submitted on July 10, 2017, for the available limits of Defendant's uninsured motorist policy.  (*Id.*)

During the claims process, Defendant contends that "Plaintiff refused to provide [it] with the information it needed to fully evaluate the nature and extent of his damages."  (Doc. 27, at 1.)  For instance, according to Defendant, Plaintiff "refused to provide authorizations that would allow Defendant to collect pre- and post-incident medical records, and also refused to produce Plaintiff for independent medical examinations by Defendant's consulting experts."  (*Id.*)

Defendant refers to the report of a treating physician whose neuro-psychological testing of Plaintiff

> indicated variable effort during the evaluation. Moreover, cognitive testing results do not fit typical patterns seen with traumatic brain injury (e.g., Average Range story recall with Extremely Low Range list recall), and do not fit the expected pattern of recovery for concussion/mild traumatic brain injury, from which full cognitive recovery can be expected at this point.  Though the reason for inconsistent effort is not clear, reported depressive symptoms do suggest a possible intervention point.

(Doc. 27-1.) Defendant denied the claim by letter dated July 26, 2017. (Doc. 24-2.)

Plaintiff's motion initially encompassed Defendant's responses to Interrogatories Nos. 4, 6, 10, 11, 12, 19 (second, misnumbered) 19 and Requests for Production Nos. 1, 2, 10, 11, and 13. (*See generally* Doc. 24.) Since the filing of the present motion, the parties have resolved their differences regarding Interrogatories Nos. 4, 6, and 11and Requests for Production 11 and 13. This Order will thus address Interrogatories Nos. 10, 12, 19, 19, and Requests for Production Nos. 1, 2, and 10.

## ANALYSIS

**I.     Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

3

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## II.  Privilege Log.

Plaintiff argues that "Defendant did not produce a privilege log in the original responses and did not create one after it was discussed during the December 21, 2017 'meet and confer' phone call." (Doc. 24, at 6.) Although Defendant should have included a privilege log with its original discovery responses, the parties seemed to have resolved this issue during their meet and confer session.

Defendant responds that it provided the requested privilege log upon returning to the office after the New Year. (Doc. 27, at 4; Doc. 27-4.) Defendant subsequently provided a revised privilege log within a day after Plaintiff complained the log did not include Bates numbers. (Doc. 27, at 4; Doc. 27-5.) Considering Plaintiff's motion was filed less than a week after the meet and confer session – not to mention that it was the week including the Christmas holiday – the Court is satisfied that Defendant has complied with its duties as to the provision of a privilege log. This portion of Plaintiff's motion is **DENIED**.

## III.  General Objections.

4

Plaintiff complains of Defendant's inclusion of the language "to the extent" to qualify several of its objections.  (Doc. 24, at 9.)  Plaintiff argues that this constitutes a "general objection" which Courts in this District have routinely overruled.  (*Id*.)  Plaintiff's argument is misplaced.

Plaintiff is correct that Courts in this District find general objections to be "worthless and improper." ***Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.***, 08–1250–MLB–KGG, 2012 WL 1080801 (D. Kan. March 29, 2012) (citing ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 660–61 (D. Kan. 2004)). The cases addressing "general objections," however, deal with the situation in which a party includes one or more overreaching objections, typically enumerated as an introduction to the discovery responses in their entirety.  The party indicates that the general objections are to be applied to any of the specific discovery requests included in the set of discovery responses "to the extent" the objection is applicable to such discovery request.  *See* ***Camp v. Gregory***, No. 12-2083-EMF-KGG, 2013 WL 656894, at *1 (D. Kan. Feb. 22, 2013) (stating that the Court "surmises it is supposed to theoretically apply" the general objection(s) to each discovery request).

> ''Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any [specific] request for discovery.''  At worst, these types of objections leave the

5

>requesting party 'unsure whether or not the objection correlates to withheld information.'

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 13-2150-CM-KGG, 2014 WL 2815515, at *2-3 (D. Kan. June 23, 2014) (internal citations omitted).

Defendant's use of the "to the extent" language does, however, constitute an improper conditional objection. As such, the Court discusses this language in the following section of this Order.

### IV.   Conditional Objections.

Plaintiff also complains of Defendant's use of "conditional objections." This Court has also specifically indicated its disapproval of "conditional" discovery responses, such as occurs when "a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections." *Westlake v. BMO Harris Bank N.A.*, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (internal citation omitted). This Court has held that such conditional responses are "invalid," "unsustainable," and "violate common sense." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 13-2150-CM-KGG, 2014 WL 2815515, at *3 (D. Kan. June 23, 2014) (internal citation omitted).

The Court **GRANTS** this portion of Plaintiff's motion and **overrules** Defendant's use of conditional objections such as "without waiving," "subject to," and/or "to the extent." This portion of Plaintiff's motion does not enumerate or

6

discuss specific discovery requests to which Defendant has raised such conditional objections.  The Court will thus apply this ruling to the specific discovery requests addressed in Plaintiff's motion, discussed *infra*, where pertinent.  In **Everlast**, *supra*, the undersigned Magistrate Judge directed the responding party to provide supplemental responses that removed the conditional responses.  2014 WL 2815515, at *3; *see also* **Meyer v. United States of America**, No. 16-2411-KGG, 2017 WL 735750 (D. Kan. Feb. 24, 2007).  The same is ordered of Defendant herein.

## V. Application of Attorney-Client Privilege and Work Product Doctrine.

This Court has recognized that there is a rebuttable presumption "'that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made' as to that claim." **AKH Company, Inc. v. Universal Underwriters Ins. Co.**, 300 F.R.D. 684, 688-89 (D. Kan. 2014) (quoting **Lindley v. Life Investors Ins. Co. of America**, 267 F.R.D. 382, 399 (N.D.Okla.2010)).

> Fed.R.Civ.P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated.  It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the

7

> insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision.

*Id*. (internal citations omitted). "'[T]he question of whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation.'" *Id.*, at 698 (quoting **U.S. Fire Ins. Co. v. Bunge North America, Inc.**, 247 F.R.D. 656, 659 (D.Kan.2007).

Plaintiff argues that "[c]learly, no matter when the deadline to respond might be, a review by someone with expertise in traumatic brain injury in Travelers or for Travelers would have been part of the normal claims process." (Doc. 24, at 12.) Plaintiff continues that "litigation could not have reasonably been anticipated until the July 26, 2017[,] denial letter was written." (*Id.*, at 13.) As such, the responsibility of these doctors at the time their opinions were initially set forth was not to "assist in anticipated or ongoing litigation, but to assist the claims department in evaluating the claim . . . ." (*Id.*) Plaintiff argues that these opinions

8

"go to the heart of whether the Defendant denied the claim 'without just cause or excuse' . . . ." Further, Plaintiff contends that it does not seek to depose the doctors before expert designations, but that having the information they gave the claims department "is the only way the Plaintiff can conduct effective depositions of the claims adjustors." (Doc. 24, at 14.)

Defendant responds that a clearly delineated shift occurred when Plaintiff made the demand.

> Defendant had been working on Plaintiff's claim since the accident in 2013. All documents contained in the claim file related to Plaintiff's claim from the date of the accident through May 12, 2017 were produced, without redaction. (Entries related to damage claims of others included in the incident were redacted for confidentiality reasons; at this time Plaintiff has not raised an issue as to the discoverability of those entries).
> After receiving the policy limit demand from Plaintiff's counsel on or about May 1, 2017, the adjustor handling the case, Geoff Perkins, shifted Defendant's investigation in anticipation of likely litigation and immediately retained counsel to provide legal advice in connection therewith.
> In this case, Plaintiff is seeking the production of documents from the claim file after May 12th. After May 12, 2017, however, the investigation of the nature and extent of Plaintiff's injuries was conducted by counsel, and at the direction of counsel. It was Defendant's attorneys who contacted the consulting physicians, and the attorneys who obtained their opinions related to the records. It was the attorneys who communicated this information to Travelers. The Defendant does not dispute that the Plaintiff may discover from Travelers what information they obtained from the physicians that was considered in the decision to

>deny Plaintiff's claims. The problem is that the Plaintiff is seeking to obtain that information by looking at protected communications between Travelers and its defense counsel, and notes that Travelers adjustors made to the file which summarized those conversations.

(Doc. 27, at 5-6.)

Defendant continues that "the attorney-client communication privilege protects the bulk of the communications redacted from the claim file and that the work product doctrine protects the remainder." (*Id.*, at 6.) Defendant acknowledges that the consulting experts did not prepare written reports, thus any such communications are privileged in Defendant's opinion. (*Id.*) As such, Defendant approached Plaintiff with a compromise "wherein the attorney-client communications and work-product documents would be produced in part, provided there was an agreement that doing so would not waive privilege for other communications, opinions conveyed, etc. during the investigation conducted at the direction of counsel." (*Id.*, at 7.) According to Defendant, "Plaintiff indicated a willingness to accept this with respect to certain, but not all at issue communications." (*Id.*) Defendant argues that "[w]ithout this compromise, there can be no production." (*Id.*)

Plaintiff acknowledges that "the usual line to demarcate the work product privilege in insurance claim files is the denial of the claim. Courts have routinely applied a rebuttable presumption 'that neither attorney work product nor attorney-

client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made' as to that claim." (Doc. 28, at 5 (citing *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 399 (N.D. Okla. 2010)).

The Court notes Defendant's contention that four years had passed from the date of the accident until the UIM demand letter was sent. Clearly this was not a situation in which an insurer is attempting to withhold from production the routine claims work of its employees that occurred within a few days, weeks, or even months of a claim being filed. That stated, the Court has some concern as to how an insurer in this situation would be able to "shift" from its routine, investigatory work to "anticipation of litigation" mode until after medical reviews regarding Plaintiff were completed.

The Court finds, however, that Plaintiff's demand of the UIM policy limits on April 30, 2017, taken in the context of the prior results of the neuropsychological testing conducted by Plaintiff's treating physician (which occurred in June 2015 and discussed *supra*; Doc. 27-1) would have been sufficient to result in a shift by Defendant from routine claims handling to reasonably anticipating litigation under these fact-specific circumstances. As such, Defendant's attorney-client privilege and work product objections regarding the documents and communications generated after May 12, 2017, are **sustained**.

## VI. Specific Discovery Requests.

### A. Interrogatories Nos. 10, 12, 19 and (misnumbered 19).

Interrogatory No. 10 asks if Defendant "contend[s] the Plaintiff's claim for loss of future earning capacity . . . was not caused by the accident on May 30, 2013," and, if so, to "state each and every reason for such contention." (Doc. 24-3, at 4.) Interrogatory No. 12 requests that Defendant state the reasons it believes it is not liable for any of the damage discussed in Plaintiff's July 10, 2017, demand letter. (*Id.*) Interrogatory No. 19 asks Defendant to "identify any symptoms that contributed to" Defendant's belief, if any, that "it is more likely than not the Plaintiff sustained any type of injury" from the underlying accident. (Doc. 24-3, at 6. The second (misnumbered) Interrogatory No. 19 ask Defendant to identify whether it believes "Plaintiff suffered from post-concussive syndrome before July 26, 2017" and, if so, to state the causes therefore and reasons for said belief. (Id., at 7.)

Defendant objects that these interrogatories are "premature" because they seek "the content of expert opinions." (Doc. 27, at 9-12; Doc. 24-3, at 4-7.) Defendant stated it would disclose its experts and their opinions in conjunction with the Court's Scheduling Order. (Doc. 24-3, at 4-7.) In response to Interrogatory No. 12, after stating its conditional objections (which were overruled, *supra*), Defendant responded that its "investigation indicated the Plaintiff's alleged

injuries and related damages are not of the nature and extent alleged in connection with the claim; and/or were not causally connected to the accident." (*Id*., at 5.) In response to Interrogatories Nos. 19 and (misnumbered) 19, Defendant refers Plaintiff to his medical records "[t]o the extent [his] treating physicians rendered opinions" on this issue. (*Id*., at 6-7.)

Plaintiff argues that it is "simply seeking to know what injury, if any, Defendant thought Plaintiff sustained (and post concussive syndrome in particular.)" (Doc. 24, at 17.) Plaintiff continues that he is "asking what Travelers believes, not the doctors it used to review the records. Since it was the adjustor who denied the claim on the basis of lack of medical causation, these answers are needed for the depositions of the adjustors and directly relate to whether the Defendant denied the claim without just cause or excuse." (*Id*.)

Defendant responds that "given this contention will be supported by expert opinion testimony, the Defendant respectfully requests that it not be required to respond until its expert disclosures and reports are due pursuant to this Court's scheduling order." (Doc. 27, at 11, 12.) Defendant continues that

> Plaintiff seems to argue that this Interrogatory is seeking discovery relevant to the reason for denial, but it is not. It is seeking contentions fundamental to the breach of contract action. As noted above, if the Plaintiff seeks information regarding the basis for the denial, it should request that information rather than making general inquiries which apply pre- and post-suit, responses to

13

>which may confuse the jury as the basis for denial and
>whether that denial was based on just cause or
>excuse is a separate and distinct issue from the proof of
>Plaintiff's damages, including causation and the nature
>and extent thereof.

(*Id.*, at 11-12, 12-13.)

The Court is not persuaded by Defendant's argument. These interrogatories seek factual information. While the information may be "supported" by expert testimony, the underlying factual basis for Defendant's belief that Plaintiff did or did not sustain injury in the accident and/or suffered post-concussive syndrome prior to the denial of the claim is discoverable. This is particularly true when Defendant would have had to have considered these issues in the process of shifting from its routine claims work to "anticipation of litigation" mode.

Defendant's discovery responses also state that "to the extent Plaintiff's treating physicians rendered opinions in this regard, see the Plaintiff's medical records produced to the Defendant by the Plaintiff during the claims period." (Doc. 24-3, at 6, 7.) As discussed *supra*, this conditional response is improper. Defendant is instructed to provide supplemental responses to these two interrogatories identifying the specific portions of Plaintiff's medical records, by Bates number, that include relevant opinions rendered by Plaintiff's treating physicians. This portion of Plaintiff's motion is **GRANTED**.

    **B.**    **Request for Production No. 1.**

This discovery request seeks all documents, including claims manuals and electronically stored information, "used or referred to in the handling of personal injury claims and/or underinsured claims, and which were in effect between January 1, 2016 and July 26, 2017." (Doc. 24, at 17.) Plaintiff has limited the temporal scope of the request to "most (but not all) of the time Defendant was on notice of the UIM claim to the date of denial." (*Id*., at 18.)

Defendant responded with a laundry list of objections, including that the request was facially overly broad, sought irrelevant information, and implicated the attorney-client privilege and work product doctrine. (Doc. 24-4, at 1.) Defendant continues that discovery related to the underlying claim, "including the basis for the claims denial is relevant and discoverable, but discovery related to claims policies, procedures, manuals, etc. such as the group of documents requested by Request No. 1 is not reasonably calculated to lead to the discovery of admissible evidence herein."[1] (*Id*., at 1.) Defendant argues that it "is not relying on its policies or procedures as providing a basis for its denial." (Doc. 27, at 14.)

The Court is sympathetic to Defendant's objections as to the breadth of the request. Plaintiff has not established why all documents used or referred to in the handling of any personal injury claims and/or underinsured claims are relevant.

---

[1] The Court notes that the "reasonably calculated" standard has been replaced by the "proportional to the needs of the case" standard. *See* Fed.R.Civ.P. 26(b).

15

That stated, the Court finds that any documents used or referred to by Defendant – or applicable to the handling of Plaintiff's specific, underlying claim (whether or not ultimately used or referred to by Defendant) – are relevant and discoverable. Defendant is thus directed to provide Plaintiff will any and all documents (including but not limited to the formats enumerated in Plaintiff's request) that were specifically used or referred to in the handling of the underlying claim at issue as well as such documents that were in effect for handling uninsured motorist claims generally from January 1, 2016 and July 26, 2017. This portion of Plaintiff's motion is **GRANTED in part**.

### C. Requests Nos. 2 and 10.

Request No. 2 seeks "all claims files, investigative files, computer files underwriting files and emails (including case evaluations) regarding" the underlying claim "and which were created before the filing of this suit." (Doc. 24-4, at 2.) Request No. 10 asks for "all documents which relate to the evaluation or interpretation of medical records and/or medical bills" for the underlying claim.

Defendant again responds with a litany of objections, including the attorney-client privilege and work product doctrine, even though no privilege log was provided. (*Id.*) Defendant also objects that the request seeks information related to the injury claims made by non-parties, which implicates the confidential medical information of these individuals. (*Id.*) Defendant argues that documents

16

containing such information "have no relevance to Plaintiff's claims herein." (*Id.*) Defendant also objects "to the extent the request seeks the underwriting files for the subject policy." (*Id.*)  Defendant contends that such documents "are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."[2]  (*Id.*)

In response to Request No. 2, after stating its conditional objections (which were overruled, *supra*), Defendant indicates that it produced the claim file with its Rule 26 disclosures.  (*Id.*, at 2.)  In response to Request No. 10, after stating its conditional objections (which were overruled, *supra*), Defendant indicates that there are no responsive documents "other than those contained in the non-privileged portion of the claims file, previously produced."  (*Id.*, at 4.)

As discussed *supra*, these conditional responses, stating objections "to the extent" the requests are seeking certain information, are improper.  Defendant is instructed to provide supplemental responses to these two requests removing these objections and identifying any documents being withheld on the basis of privilege.[3]

---

[2] Again, the "reasonably calculated" standard has been replaced by the "proportional to the needs of the case" standard. *See* Fed.R.Civ.P. 26(b).

[3] Despite inclusion of the "to the extent" language, the Court agrees with Defendant's position that medical records constituting "documents related to the injury claims made by persons involved in the subject incident other than the Plaintiff" are irrelevant and not discoverable.

Plaintiff argues that Defendant has not rebutted the presumption that "neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim file form discovery 'before a final decision is made' as to that claim." (Doc. 24, at 19 (citation omitted).) As discussed above, however, the Court does not agree with Plaintiff's position. Defendant has adequately explained when its work shifted from routine claims handling to the "anticipation of litigation." The documents were redacted by Defendant accordingly. This portion of Plaintiff's motion is thus **GRANTED in part** and **DENIED in part**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 24) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

IT IS SO ORDERED.

Dated this 16th day of April, 2018, at Wichita, Kansas.

 S/ KENNETH G. GALE
 HON. KENNETH G. GALE
 U.S. MAGISTRATE JUDGE