**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WILLIAM LANE BARCUS,

     Plaintiff,

     v.                          Case No. 2:17-cv-02492-HLT

THE PHOENIX INSURANCE CO.,

     Defendant.

## MEMORANDUM AND ORDER

Plaintiff William Lane Barcus brings this action seeking underinsured motorist benefits from his insurer, Defendant The Phoenix Insurance Co., in connection with a May 2013 motor vehicle accident. Plaintiff contends the accident caused a traumatic brain injury, resulting in vestibular symptoms and permanent cognitive deficits. Defendant disputes the nature and extent of Plaintiff's injuries and the value of Plaintiff's alleged damages.

Before the Court are five motions to exclude expert testimony (Docs. 92, 93, 94, 95, 96). After a detailed review, the Court denies Plaintiff's motions to exclude testimony of Dr. Maria Korth, Dr. Rachel Jensen, and Dr. Keith Kobes (Docs. 92, 93, 94). The Court grants Defendant's motion to exclude testimony of Michael Dreiling (Doc. 96) and grants in part and denies in part Defendant's motion to exclude testimony of Dr. Julia Johnson (Doc. 95).

## I.    STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and imposes upon the district court a "gatekeeping obligation" to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A court's gatekeeping function, however, does not replace the traditional adversary system and the role of the jury. *Cohen v. Lockwood*, 2004 WL

763961, at *2 (D. Kan. 2004). Where there are questions related to the bases and sources of an expert's opinion, these issues go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine. *Id.* The burden is on the party offering the expert testimony to prove its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II.    ANALYSIS

### A.  Defendant's Experts

Defendant offers testimony from Dr. Maria Korth, Dr. Rachel Jensen, and Dr. Keith Kobes to support its position that (1) Plaintiff did not suffer a traumatic brain injury in the subject accident and (2) Plaintiff is no longer experiencing any cognitive deficits as a result of the accident. Plaintiff moves to exclude the proffered testimony. Docs. 92, 93, 94. The Court addresses Plaintiff's arguments with respect to each expert.

#### 1.  Dr. Maria Korth (Doc. 94)

Dr. Korth is a neuropsychologist and one of Plaintiff's primary treating providers. Plaintiff was referred to Dr. Korth for evaluation and treatment after complaining of so-called "vestibular" symptoms—such as dizziness and difficulty concentrating. Doc. 100-1 at 1-3. Dr. Korth testifies that, when she first examined Plaintiff in January 2014, she diagnosed Plaintiff with post-concussive syndrome based on subjective reports from Plaintiff and his mother, information gathered during the visit, and Plaintiff's initial test results. Doc. 100-2 at 4, 8. However, Dr. Korth further testifies that, in February 2016, Plaintiff was no longer presenting in a way that was consistent with post-concussive syndrome, and she discharged him. *Id.* at 4. Specifically, Dr. Korth testifies that, at the time she discharged Plaintiff, he no longer met the criteria for post-concussive syndrome. *Id.* at 15.

Plaintiff challenges the admissibility of Dr. Korth's testimony primarily on the basis that it is unreliable. Doc. 94. Specifically, Plaintiff argues that Dr. Korth cannot testify regarding the extent to which Plaintiff's cognitive deficits had abated by February 2016 because her opinion is "speculative and not supported by sufficient facts or data." *Id.* at 7-8. For the following reasons, the Court disagrees.

First, Dr. Korth was Plaintiff's treating neuropsychologist. Courts in this district have recognized that because "[a] treating physician often forms an opinion about the cause of an injury or the extent to which it will persist in the future based upon his examination of a patient," courts "have allowed doctors to 'testify at trial concerning any medical opinions that [they] formed during the course of . . . treatment with respect to [plaintiff's] injuries, their cause, and the extent of [plaintiff's] disability.'" *Cohen*, 2004 WL 763961, at *3 (internal citations omitted); *see also Watson v. Taylor*, 2006 WL 6901064, at *3 (D. Kan. 2006). The opinions offered by Dr. Korth in her report are based on her personal examination, treatment, and cognitive testing of Plaintiff. She is therefore qualified, as Plaintiff's treating provider, to testify to the opinions formed during her treatment regarding the extent of his injuries, the cause of those injuries, and her diagnosis. These opinions are reliable and admissible.

Moreover—with respect to Plaintiff's argument that Dr. Korth's opinion was not offered with a sufficient degree of "probability"—a treating provider's opinion is not rendered unreliable simply because she does not testify regarding the degree of her certainty. *See Randolph v. QuikTrip Corp.*, 2017 WL 2181120, at *2 (D. Kan. 2017) ("When the treating physician does not state with certainty the cause of the plaintiff's condition, 'that does not render his testimony unreliable.'"). Indeed, courts in this district have found a treating provider's opinion sufficiently reliable even

when not "particularly persuasive."[1] *Id.* (holding that, though the treating physician's opinion as to causation "may not be particularly persuasive, it is sufficiently reliable to be admissible"). Therefore, to the extent Dr. Korth did not state with certainty that Plaintiff was no longer suffering cognitive deficits, this does not render her testimony unreliable. That issue goes to the weight and credibility that should be afforded to Dr. Korth's opinion, which is for the jury to decide.

Second, the Court rejects Plaintiff's argument that Dr. Korth cannot opine regarding alternative explanations (i.e., other than cognitive deficits) for Plaintiff's vestibular symptoms. In her deposition, Dr. Korth testified that, during Plaintiff's last visit, she considered other explanations for his reported symptoms—including conversion disorder and depression. Doc. 100-2 at 16. Dr. Korth did not give any opinion about the certainty or probability of these causes. However, as Defendant explains, Dr. Korth's testimony is not being offered to establish causation. Plaintiff, not Defendant, bears the burden to establish with the requisite degree of certainty that his vestibular symptoms ultimately stem from the accident. *See Cohen*, 2004 WL 763961, at *5. Defendant is using Dr. Korth's testimony to counter Plaintiff's contentions regarding the cause of his symptoms, which is reasonable. *Id.* The Court denies Plaintiff's motion to exclude Dr. Korth's testimony.

### 2. Dr. Rachel Jensen (Doc. 92)

Dr. Jensen is a neuropsychologist who examined Plaintiff and has been designated as an expert by Defendant. In June 2015, Dr. Korth referred Plaintiff to Dr. Jensen for a neuropsychological evaluation to assess Plaintiff's cognitive functioning. Doc. 98-1 at 1. Dr. Jensen testifies that Plaintiff's efforts during the testing appeared to fluctuate and this, combined with inconsistent test results, raised "validity" concerns. Doc. 98-2 at 7-8. Due to these

---

[1] The Court, however, makes no finding regarding the weight and credibility of Dr. Korth's testimony.

validity concerns, Dr. Jensen testifies she was unable to determine whether Plaintiff suffered a cognitive impairment. *Id.* at 22. As with Dr. Korth, Plaintiff appears to argue that Dr. Jensen's testimony should be excluded as unreliable. Doc. 92. Plaintiff primarily challenges Dr. Jensen's methodology, arguing that, because she reached her opinion without performing a "differential diagnosis,"[2] her testimony does not satisfy Rule 702's reliability requirement. *Id.* The Court disagrees.

First, Dr. Jensen is a treating provider and, as such, is qualified to testify to her opinions regarding Plaintiff's cognitive functioning that were formed during the course of her treatment. These opinions are reliable and admissible for the reasons set forth above with respect to Dr. Korth. *See supra* Part II.A.1.

Second, the fact that Dr. Jensen did not perform a differential diagnosis does not warrant exclusion. Although a differential diagnosis is admissible under certain circumstances if performed, it is not required for a treating provider's testimony to be admissible. *Watson*, 2006 WL 6901064, at *3. Likewise, because Dr. Jensen did not use a differential diagnosis methodology to reach her conclusions, the cases cited by Plaintiff in support of his argument for exclusion— *Delgado v. Unruh*, 2017 WL 957437 (D. Kan. 2017), *Rucker v. Drake*, 2001 WL 36095910 (E.D. Mo. 2001), and *Braxton v. DKMZ Trucking, Inc.*, 2013 WL 6592771 (E.D. Mo. 2013) (each related to the admissibility of expert opinions based on a differential diagnosis methodology)—are inapposite. Moreover, as with Dr. Korth, Defendant offers Dr. Jensen's testimony to cast doubt on Plaintiff's theory of causation, not to establish that element—indeed, that is Plaintiff's burden.

---

[2] A differential diagnosis is a standard scientific technique used to identify the <u>cause</u> of a medical problem. *Cohen*, 2004 WL 763961, at *3. It refers to the process by which an expert "rules in" all scientifically plausible causes of the plaintiff's injury and then "rules out" the least plausible causes until only the most likely cause remains. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1209 (10th Cir. 2002). This remaining cause is the expert's conclusion. *Id.*

Defendant's use of Dr. Jensen's testimony is sufficiently reasonable and reliable. *See Cohen*, 2004 WL 763961, at *5. The Court therefore denies Plaintiff's motion to exclude Dr. Jensen.

### 3. Dr. Keith Kobes (Doc. 93)

Dr. Kobes is a neuropsychologist who has been retained by Defendant. Based on an independent examination of Plaintiff and his review of Plaintiff's records from his treating providers, Dr. Kobes issued a report in March 2018 concluding that Plaintiff did not suffer a traumatic brain injury in the accident and is not experiencing any resultant cognitive deficits. Doc. 97-1 at 24.

As with Dr. Jensen, Plaintiff seeks to exclude Dr. Kobes's testimony as unreliable and challenges the testimony primarily on the basis that Dr. Kobes did not perform a differential diagnosis. Doc. 93. The Court disagrees and finds that, for the same reasons set forth above with respect to Dr. Jensen, the fact that Dr. Kobes did not use a differential diagnosis methodology does not render his testimony inadmissible. *See supra* Part II.A.2. A defense expert's opinion may be admissible regardless of whether the expert has ruled out every cause to arrive at their opinion. *Cohen*, 2004 WL 763961, at *5. The Court accordingly denies Plaintiff's motion to exclude Dr. Kobes.

### B. Plaintiff's Experts

Plaintiff offers testimony from vocational expert Michael Dreiling and educational neuropsychologist Dr. Julia Johnson to support his theory of damages. Defendant moves to exclude Mr. Dreiling and Dr. Johnson's testimony. Docs. 95, 96. The Court addresses Defendant's arguments with respect to Mr. Dreiling and Dr. Johnson in turn.

### 1. Michael Dreiling (Doc. 96)

Plaintiff designates Mr. Dreiling as a vocational expert. In this case, Mr. Dreiling opines that, although prior to the accident it would have been reasonable to expect Plaintiff to obtain a bachelor's-level degree, this is no longer a realistic expectation. Doc. 96-1 at 9. Mr. Dreiling further testifies that Plaintiff's realistic earning capacity in the open labor market is now that of a high school graduate at a below-average range. *Id.* In its motion, Defendant does not attack Mr. Dreiling's qualifications but, rather, seeks to exclude the testimony due to Mr. Dreiling's flawed methodology. Doc. 96.

The Court agrees with Defendant and finds that Mr. Dreiling's testimony is not the product of a reliable methodology and warrants exclusion. In rendering his opinion, Mr. Dreiling did not perform any vocational testing of Plaintiff, instead relying on Plaintiff's records—including the results of Dr. Jensen's June 2015 neuropsychological testing and Dr. Korth's March 2015 treatment records. Doc. 96-1; Doc. 96-2 at 4. Mr. Dreiling also conducted interviews of Plaintiff and Plaintiff's mother. Doc. 96-2 at 2-3. Notably, Mr. Dreiling did not rely upon the records from Plaintiff's final visit with Dr. Korth on February 10, 2016. Doc. 96-1; Doc. 96-2 at 9-10.

In this case, Mr. Dreiling has testified that, in conducting a vocational assessment, the appropriate methodology includes considering records from the end of a patient's treatment. Doc. 96-2 at 8. Nonetheless, as set forth above, Mr. Dreiling relied upon Dr. Korth's March 2015 records instead of also considering the records from her final treatment with Plaintiff almost a full year later, wherein—crucially for purposes of this litigation—she reversed course from her previous diagnosis, concluding Plaintiff no longer met the criteria for post-concussive syndrome. Dr. Korth's February 2016 records were available in early 2017 when Mr. Dreiling performed his vocational assessment of Plaintiff and drafted his corresponding report, yet Mr. Dreiling did not

consider them—nor does he explain why he did not consider the records or how the records would impact his opinion. *Id.* at 9-10.

If any step in an expert's methodology renders the expert's analysis unreliable, it also renders the testimony inadmissible. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) ("Under *Daubert*, 'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.'"). Even though Mr. Dreiling had the time and ability to review Dr. Korth's end-of-treatment records in formulating his opinion—a necessary review based upon his admitted methodology—he did not do so and does not proffer any explanation for this failure. By Mr. Dreiling's own admission, his methodology in this case is flawed. This renders Mr. Dreiling's opinion unreliable and, accordingly, inadmissible. The Court grants Defendant's motion to exclude Mr. Dreiling's testimony.[3]

### 2. Dr. Julia Johnson (Doc. 95)

Dr. Johnson is an educational neuropsychologist retained by Plaintiff as an expert in this action. As an educational neuropsychologist, Dr. Johnson conducts evaluations of students to make "educational" diagnoses of health impairments that impact a student's ability to learn. Doc. 95-3 at 6, 14. Dr. Johnson has testified that her role in this case included reviewing Plaintiff's treatment records and "confirming" the diagnoses of Plaintiff's treating providers. *Id.* at 26.

In her report, Dr. Johnson opines that Plaintiff has an educational diagnosis of a traumatic brain injury, post-traumatic stress disorder ("PTSD"), and Generalized Anxiety Disorder, affecting his cognitive processing speed and resulting in diminished efficiency. Doc. 95-2 at 2. Dr. Johnson

---

[3] The Court further notes that other courts in this district have recently excluded expert testimony from Mr. Dreiling on the basis of unreliability. *See, e.g.*, *Foster v. USIC Locating Servs., LLC*, 2018 WL 3757577, at *3 (D. Kan. 2018) (finding Mr. Dreiling's opinion regarding the plaintiff's future earning capacity unreliable because it lacked "a sufficient factual foundation").

also concludes that Plaintiff would find it "extremely difficult to complete a college degree" based on his cognitive deficits and that Plaintiff is entitled to, and will require, accommodations to complete any post-high school vocational training or college level studies. *Id.* at 6-7. Defendant attacks Dr. Johnson's testimony as (1) the product of an unreliable methodology, (2) unsupported by the facts, and (3) irrelevant. Doc. 95.

The Court disagrees that the wholesale exclusion of Dr. Johnson's proffered testimony is warranted. However, the Court finds that Dr. Johnson should not be permitted to "confirm" Dr. Korth's 2014 diagnosis past the date of her February 2016 report. Like Mr. Dreiling, Dr. Johnson did not independently evaluate Plaintiff and thus bases her opinions exclusively on her review of Plaintiff's records. Doc. 95-2 at 2; Doc. 95-3 at 26. Among the materials considered by Dr. Johnson in rendering her opinion are treatment records from Dr. Korth dated October 15, 2014, March 3, 2015, and February 15, 2016. Doc. 95-2 at 2. Dr. Johnson uses those records to "confirm" Dr. Korth's 2014 diagnosis. *Id.*; Doc. 95-3 at 26. The Court finds that Dr. Johnson may confirm Dr. Korth's diagnosis up to February 2016. However, past that point there is a treating provider—Dr. Korth herself—who personally evaluated Plaintiff and withdrew her diagnosis of post-concussive syndrome. Dr. Johnson therefore cannot confirm any diagnosis by Dr. Korth beyond the date of Dr. Korth's February 10, 2016 report because, simply put, there is no diagnosis to confirm at that point.

The Court also excludes Dr. Johnson from offering "preliminary diagnoses" of PTSD and Generalized Anxiety Disorder. In her deposition, Dr. Johnson testified to the importance of interviewing the patient, his parents, and his teachers when performing an evaluation, and acknowledged that these are sources of information typically relied upon by professionals in her field. Doc. 101-2 at 1-2, 5. To that end, Dr. Johnson further testified that she could not diagnose a

patient without <u>personally evaluating</u> the patient. *Id.* at 9. As set forth above, Dr. Johnson did not independently evaluate Plaintiff, nor did she meet or speak with Plaintiff's parents or teachers or perform any independent testing of Plaintiff. *Id.* at 7. Dr. Johnson's own testimony in this case— coupled with the fact that, as Defendant points out, Plaintiff has never been diagnosed with PTSD or Generalized Anxiety Disorder by a treating provider—illustrates that her methodology is unreliable on this point. Therefore, Dr. Johnson's testimony regarding her preliminary diagnoses of PTSD and Generalized Anxiety Disorder must also be excluded.

Finally, with respect to any testimony from Dr. Johnson regarding Plaintiff's entitlement to accommodations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., or the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., the Court agrees with Defendant that this testimony is irrelevant. The Court recognizes that Plaintiff, in his opposition to Defendant's motion to exclude Dr. Johnson, explains that Dr. Johnson does not intend to opine regarding Plaintiff's entitlement to any such accommodations. Doc. 101 at 19. However, for the sake of clarity, to the extent Dr. Johnson purports to offer such testimony, she is precluded from doing so.

The Court therefore grants Defendant's motion in part and denies it in part. The Court declines to exclude the entirety of Dr. Johnson's proffered testimony. However, the Court excludes Dr. Johnson from (1) confirming Dr. Korth's 2014 diagnosis past the date of her February 2016 report, (2) offering preliminary diagnoses of PTSD and Generalized Anxiety Disorder, and (3) testifying regarding Plaintiff's entitlement to any accommodations under the ADA or IDEA.

## III.    CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's Daubert Motion/Motion in Limine to Limit the Testimony of Rachel Jensen (Doc. 92) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's Second Daubert Motion/Motion in Limine to Limit the Testimony of Keith Kobes (Doc. 93) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's Third Daubert Motion/Motion in Limine to Limit the Testimony of Maria Korth (Doc. 94) is DENIED.

THE COURT FURTHER ORDERS that Defendant's Motion to Exclude Plaintiff's Expert Witness, Julia Johnson, Pursuant to Rule 703 and Daubert v. Merrell Dow (Doc. 95) is GRANTED IN PART and DENIED IN PART as set forth in Part II.B.2, *supra*.

THE COURT FURTHER ORDERS that Defendant's Motion to Exclude Plaintiff's Expert Witness, Michael Dreiling, Pursuant to Rule 703 and Daubert v. Merrell Dow (Doc. 96) is GRANTED.

IT IS SO ORDERED.

Dated: January 25, 2019                    /s/  *Holly L. Teeter*                      
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE