**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

WILLIAM LANE BARCUS,

    **Plaintiff,**

    v.

THE PHOENIX INSURANCE CO.,

    **Defendant.**

Case No. 2:17-cv-02492-HLT

**MEMORANDUM AND ORDER**

    This action for recovery of benefits arises out of injuries allegedly sustained by Plaintiff William Lane Barcus in connection with a motor vehicle accident. Both Plaintiff and Defendant The Phoenix Insurance Co. designated experts to provide testimony regarding the nature and extent of Plaintiff's injuries and the value of the alleged damages. On January 25, 2019, following briefing on the parties' Daubert motions, the Court entered an order that, among other things, granted Defendant's motion to exclude portions of Plaintiff's proffered expert testimony. Doc. 106. Following that order, Plaintiff moved the Court for an order voluntarily dismissing his claims against Defendant without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Doc. 111. The case is now before the Court on that motion and, for the following reasons, the Court denies Plaintiff's request for dismissal.

**I.    BACKGROUND**

    Plaintiff initially filed this action in state court on July 27, 2017, seeking underinsured motorist benefits from his insurer, Defendant, in connection with a May 2013 motor vehicle accident. Plaintiff contends he suffered a traumatic brain injury in the accident, which resulted in vestibular symptoms and permanent cognitive deficits. Defendant disputes the nature and extent of Plaintiff's injuries and the value of Plaintiff's alleged damages.

Following removal to federal court, Magistrate Judge Kenneth G. Gale set deadlines for, among other things, the disclosure of expert witnesses. Docs. 10, 54. Over the course of the litigation, the parties accordingly designated various experts to proffer testimony and conducted extensive expert discovery. On September 20, 2018, the Court entered a pretrial order establishing a September 28, 2018 deadline for motions to exclude expert testimony. Doc. 91. Plaintiff subsequently moved to exclude testimony from three of Defendant's designated experts: Dr. Maria Korth (one of Plaintiff's treating providers), Dr. Rachel Jensen (another treating provider), and Dr. Keith Kobes (a neuropsychologist). Docs. 92-94. Defendant likewise moved to exclude testimony from two of Plaintiff's experts: vocational expert Michael Dreiling and Dr. Julia Johnson, an educational neuropsychologist. Docs. 95-96.

On January 25, 2019, the Court issued an order on the parties' Daubert motions. Doc. 106. Two of the Court's holdings in that order are particularly pertinent for purposes of its analysis of the pending motion to dismiss. First, the Court—although declining to exclude the entirety of Dr. Johnson's testimony—limited the scope of her proffered testimony. *Id.* at 8-10. Dr. Johnson's role in this case included reviewing Plaintiff's treatment records and confirming the diagnoses of Plaintiff's treating providers, including Dr. Korth. *Id.* at 8. But because Dr. Korth ultimately withdrew her previous diagnosis of post-concussive syndrome in February 2016—and because Dr. Johnson did not independently evaluate Plaintiff, thus basing her opinions regarding his cognitive deficits entirely on Plaintiff's records—the Court excluded Dr. Johnson from confirming any diagnosis <u>past that February 2016 date</u>. *Id.* at 9. The Court held:

> Dr. Johnson may confirm Dr. Korth's diagnosis up to February 2016. However, past that point there is a treating provider—Dr. Korth herself—who personally evaluated Plaintiff and withdrew her diagnosis of post-concussive syndrome. Dr. Johnson therefore cannot confirm any diagnosis by Dr. Korth

> beyond the date of Dr. Korth's February 10, 2016 report because, simply put, there is no diagnosis to confirm at that point.

*Id.* The Court therefore declined to exclude the entirety of Dr. Johnson's testimony and, rather, excluded her from confirming the diagnosis past the date of Dr. Korth's February 2016 report. *Id.*

Second, the Court granted Defendant's motion to exclude the entirety of Mr. Dreiling's proposed testimony. *Id.* at 7-8. In this case, Mr. Dreiling opined that the injuries allegedly sustained by Plaintiff in the accident affected Plaintiff's vocational potential and, accordingly, his future earning capacity. *Id.* at 7. Plaintiff therefore offered Mr. Dreiling's testimony to support his theory of damages. The Court ultimately excluded Mr. Dreiling's testimony based on admitted deviations from his clearly-articulated methodology. *Id.* at 7-8. In his deposition, Mr. Dreiling testified that, in conducting a vocational assessment (like the one performed on Plaintiff), the appropriate methodology includes considering records from the end of a patient's treatment. *Id.* at 7. However, as noted by the Court, in this case Mr. Dreiling did <u>not</u> consider records from Plaintiff's final visit with Dr. Korth on February 10, 2016, wherein she withdrew her previous diagnosis of post-concussive syndrome. *Id.* at 7-8. Because Mr. Dreiling did not consider Plaintiff's end-of-treatment records—and, further, because he provided no explanation for his failure to consider those records, which, notably, appeared to contradict his testimony regarding the extent of Plaintiff's alleged injuries—the Court found Mr. Dreiling's testimony was based on a flawed methodology and therefore unreliable. *Id.*

Following the Court's order, on March 14, 2019, Plaintiff filed this motion to voluntarily dismiss his claims against Defendant without prejudice. Doc. 111. In his motion, Plaintiff contends that justice requires he be granted dismissal so that he may refile and cure the deficiencies in Mr. Dreiling's methodology. *Id.* Defendant opposes Plaintiff's request. Doc. 112. Pursuant to the

Court's February 8, 2019 trial order, this case is set for a five-day jury trial to begin on June 10, 2019. Doc. 110.

## II. STANDARD

As set forth above, Plaintiff moves to voluntarily dismiss his claims against Defendant under Rule 41. Pursuant to Rule 41, where the defendant has already filed an answer or a motion for summary judgment, and there is no stipulation of dismissal signed by all parties, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a). This rule "is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996) (internal quotations omitted). Although "[t]hese matters fall within the district court's discretion," the court should ordinarily grant a motion for voluntary dismissal absent "legal prejudice" to the defendant. *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005).

In evaluating "legal prejudice," the Tenth Circuit has articulated the following non-exhaustive list of relevant factors to consider: (1) the opposing party's effort and expense in preparing for trial, (2) excessive delay and lack of diligence on the part of the movant, (3) insufficient explanation of the need for a dismissal, and (4) the present stage of the litigation. *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). The court should also consider any other relevant factors in making its determination. *Id.* "Each factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper." *Id.* Ultimately the court should "endeavor to insure substantial justice is accorded" to the parties. *Id.* To that end, the court considers the equities facing <u>both</u> the plaintiff and the defendant. *Id.*

**III. ANALYSIS**

In accordance with the standard articulated above, the Court must therefore determine whether Defendant will suffer legal prejudice if the Court grants Plaintiff's request for dismissal. If so, the Court must deny Plaintiff's motion. The Court examines each of the factors bearing on dismissal as follows.

**A.     Defendant's Effort and Expense in Preparing for Trial**

The Court begins its analysis with the first factor—Defendant's effort and expense in preparing for trial—and finds that this factor weighs against dismissal without prejudice in this case. Defendant has expended substantial effort and cost in getting the case to this point. Defendant has deposed multiple fact witnesses and expert witnesses, prepared expert reports, and engaged in extensive briefing on the various Daubert motions. Plaintiff argues that Defendant's pretrial efforts to this point—including the expert and fact witness depositions—do not constitute "reasonable actual preparation for trial" and, therefore, should not be considered by the Court. Doc. 111 at 7-8. The Court finds this argument unpersuasive and notes that, contrary to Plaintiff's assertions, courts in this District have routinely considered pretrial efforts—such as discovery and motion practice—in weighing this factor. *See, e.g.*, *103 Inv'rs I, L.P. v. Square D Co.*, 222 F. Supp. 2d 1263, 1271 (D. Kan. 2002) (noting multiple depositions, preparation of expert reports, Daubert motion, and dispositive motion in finding first factor weighed "heavily" in favor of overruling plaintiff's motion to dismiss without prejudice), *aff'd in part & rev'd in part on other grounds by* 372 F.3d 1213 (10th Cir. 2004); *Ritter v. Gorecki*, 2012 WL 718917, at *2 (D. Kan. 2012) (noting that discovery and preparation of summary judgment motion by defendant weighed in favor of denying plaintiff's motion to dismiss without prejudice).

Moreover, Plaintiff's argument that Defendant's duplicative expenses would be "minimal" in a second suit is of questionable merit. Doc. 111 at 10. Defendant has no doubt incurred substantial expense in connection with the expert discovery and motion practice in this case, and these efforts would be in vain were the Court to allow dismissal without prejudice at this juncture. The first factor therefore weighs in favor of denying Plaintiff's motion to dismiss without prejudice.[1]

### B. Excessive Delay and Lack of Diligence by Plaintiff

The Court next considers any excessive delay or lack of diligence by Plaintiff. Plaintiff contends that, because he has "fully complied" with the deadlines in this action, he has not delayed the case or otherwise demonstrated a lack of diligence. *Id.* at 8-9. Plaintiff also points to the favorable timing of his motion to dismiss in relation to the Court's order and the parties' subsequent unsuccessful settlement negotiations. *Id.* at 10.

The Court agrees with Defendant, however, that the issues Plaintiff ultimately seeks to address through his motion to dismiss should have been apparent well prior to the Court's January 25, 2019 order. At the very least, Plaintiff has been aware of the issues with Mr. Dreiling's methodology since Defendant submitted its Daubert briefing in September 2018. And, as Defendant argues, Plaintiff has been aware of the pertinent testimony since Defendant took Dr. Johnson's and Mr. Dreiling's depositions in mid-2018. Doc. 112 at 8. Plaintiff took his chance with the Daubert motions, and the Court made its ruling striking Mr. Dreiling's testimony. Now Plaintiff seeks to dismiss shortly before trial. Plaintiff's delay and lack of diligence weigh against dismissal without prejudice.

---

[1] Plaintiff contends that these duplicate costs can be minimized with appropriate conditions. Doc. 111 at 10-11. But the proposed conditions all allow for aspects of expert discovery and pretrial motions to be redone. Therefore, these duplicate costs concern the Court, which are substantial given the number of experts and motion practice.

### C. Plaintiff's Explanation of the Need for Dismissal

The Court next considers Plaintiff's explanation for his need to dismiss this case, which, indeed, is the primary focus of the parties' briefing. In his motion, Plaintiff requests that the Court allow him to voluntarily dismiss this action without prejudice so that he may provide Dr. Korth's February 10, 2016 report to Mr. Dreiling for review, which he contends will fix the deficiencies in Mr. Dreiling's methodology. Doc. 111 at 9. Plaintiff argues that Mr. Dreiling's testimony is essential to his claims and that the Court must allow him to dismiss and refile this suit if doing so is the only way he can call upon Mr. Dreiling and present the full merits of his claims to a jury. *Id.* at 2-3.

The Court finds this explanation inadequate. Based on the Court's ruling, it is possible Mr. Dreiling could fix the flaws in his methodology. And Mr. Dreiling may well be important to Plaintiff's case. But this does not dictate that the Court grant Plaintiff's motion. If granted, Plaintiff's motion to dismiss without prejudice would result in a new suit, the sole purpose of which would be to permit Plaintiff to supplement the materials provided to Mr. Dreiling and (according to Plaintiff) requalify Mr. Dreiling as an expert in this action. In other words, Plaintiff seeks to dismiss and refile this lawsuit in an attempt to circumvent the Court's Daubert ruling. This is improper. *See, e.g.*, *Phillips USA*, 77 F.3d at 358 (holding that a party is not permitted to avoid an adverse decision on a dispositive motion by dismissing the claim without prejudice); *Huskey v. Nat'l Liquid Blasting Corp.*, 1987 WL 276128, at *1 (D. Kan. 1987) (denying Rule 41(a)(2) motion to dismiss, which was submitted for the purpose of refiling the action to utilize expert witnesses previously stricken by the court, and holding that granting the motion "would subject the defendant to manifest legal prejudice").

In his motion, Plaintiff cites *Brown v. Baeke* in support of his argument that he should be permitted to dismiss and refile this action due to the Court's order striking Mr. Dreiling. However, the Court finds that *Brown* is inapposite to the circumstances presented here. In *Brown*, after one of the plaintiffs' standard-of-care witnesses was unavailable to testify due to a conflict, the defendant moved to strike the remaining standard-of-care expert due to a lack of recent clinical practice. 413 F.3d at 1123. The plaintiffs subsequently moved to dismiss pursuant to Rule 41(a)(2). *Id.* The magistrate judge granted the plaintiffs' motion and the dismissal was ultimately affirmed by the Tenth Circuit. *Id.* at 1123-24. Here, however, the issue is not that Mr. Dreiling is unavailable or absent due to unforeseen or "unpredictable" circumstances. Rather, the entire basis for Plaintiff's requested dismissal—as reaffirmed by the proposed curative conditions set forth in his motion to dismiss—is to reopen expert discovery, attempt to fix the deficiencies in Mr. Dreiling's methodology, and, ultimately, avoid an <u>existing</u> adverse ruling by the Court. The Court agrees with Defendant that allowing Plaintiff to "game the system" in such a manner would establish an unworkable precedent. Doc. 112 at 7. It would be inequitable to allow a plaintiff to dismiss his case, requalify his expert witness, and thereby avoid an unfavorable Daubert ruling while a defendant in the same situation would be left without recourse. For these reasons, the third factor weighs strongly against dismissal without prejudice.

### D. Present Stage of the Litigation

Finally, the Court considers the present stage of the case. Plaintiff concedes that this motion was filed late in the litigation. Doc. 111 at 9. Indeed, this case is close to trial. Discovery closed over eight months ago. And, as discussed above, the parties have expended considerable resources getting the case to this point. The Court finds that the current posture of this case weighs heavily against dismissal without prejudice. Accordingly, and in consideration of the other factors and

circumstances discussed above,[2] the Court finds Defendant would suffer legal prejudice were the Court to dismiss this action without prejudice. Plaintiff invoked the judicial system by filing this lawsuit against Defendant and must abide by the rules of the Court. The Court therefore denies Plaintiff's motion.[3]

**IV. CONCLUSION**

Based upon its examination of the foregoing factors, the Court concludes that Defendant would suffer legal prejudice if the Court were to grant Plaintiff's motion to dismiss without prejudice.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Dismiss Without Prejudice (Doc. 111) is DENIED.

IT IS SO ORDERED.

Dated: May 7, 2019         /s/ *Holly L. Teeter*
                           HOLLY L. TEETER
                           UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that Defendant also raises an additional factor for the Court's consideration: the alleged reason that Mr. Dreiling did not review Dr. Korth's February 10, 2016 report. Doc. 112 at 8. Defendant contends that, because the report is "directly adverse to [his] position in this case," Plaintiff intentionally omitted this report from the records he provided to Mr. Dreiling. *Id*. Having already found that the circumstances of this action weigh against dismissal without prejudice, however, the Court does not consider Defendant's arguments on this issue.

[3] Given its decision to deny Plaintiff's motion to dismiss without prejudice, the Court does not address the propriety of the curative conditions proposed by the parties. But consideration of these conditions does not change the outcome. All of these conditions still allow Plaintiff to avoid the Court's ruling, which is not appropriate. Plaintiff chose not to address the issues with Mr. Dreiling's methodology when first raised in Defendant's motion and, instead, took his chances with motion practice. He lost on this issue. And he cannot now seek, through a motion to dismiss, a chance to render the Court's opinion advisory and "redo" expert discovery through a series of conditions that allow a second chance. Indeed, including conditions that prevent this "redo" would essentially render Plaintiff's motion to dismiss a motion for a new trial date.